No. 88-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

BROOK W. GARRETSON AND LINDA GARRETSON,

Plaintiffs and Appellants,

-vs-

MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE
CO., and WESTERN AGRICULTURAL INSURANCE CO.,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Calvin A. Calton; Calton, Hamman, Calton & Wolfe,
Billings, Montana

For Respondent:

James D. Walen; Felt & Martin, Billings, Montana

Submitted on Briefs: June 22, 1988

Decided: September 23, 1988

Filed: SEP 2 3 1988

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs Brook and Linda Garretson appeal a District Court order granting summary judgment in favor of Mountain West Farm Bureau Mutual Insurance Company (Farm Bureau). Summary judgment was granted January 12, 1988, in the Thirteenth Judicial District, Yellowstone County. We affirm.

On May 19, 1987, plaintiff-appellant Brook Garretson was involved in an automobile accident. The vehicle driven by Garretson, a 1984 Chrysler Laser, was "totalled." The Garretsons purchased the vehicle December 19, 1986, for $8,995. At the time of the accident, the Garretsons' outstanding balance on their car loan was $8,295.

The Garretsons insured the vehicle with Farm Bureau and the insurance policy included the following provisions:

> Appraisal. (Not applicable to liability coverages). If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence [sic] premises is located to select an umpire. The appraisers shall then set the amount of the loss . . . Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be shared equally.

. . .

> Suit against us. No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within four years after the date of discovery of loss or damage.

The Garretsons' insurance claim was investigated by Gary Cantrell (Cantrell), Farm Bureau's claims representative. Cantrell initially valued the car at $6,295 and offered to settle the claim in that amount. According to Garretson, Cantrell stated that if the offer were refused, the value would be determined through arbitration and the Garretsons would receive $5,400 to $5,500 for the vehicle. Cantrell contends he merely described the appraisal procedures set forth in the insurance policy. The Garretsons assert Cantrell later phoned Linda Garretson at work and attempted to settle the claim with her.

The Garretsons demanded payment in the amount of $8,295. When Farm Bureau refused, the Garretsons filed a complaint on June 16, 1987, alleging bad faith. On July 13, 1987, counsel for Farm Bureau demanded the Garretsons' loss be appraised through the procedures set forth in Garretsons' policy. The Garretsons refused, contending the most accurate estimation of their loss was the remaining amount of their loan. Additionally, the Garretsons claim an accurate appraisal is impossible because the damage is so severe. Yet, according to Farm Bureau, severely damaged vehicles can still be appraised by experts with reasonable accuracy.

Summary judgment was granted in favor of Farm Bureau on January 12, 1988. The District Court found Farm Bureau had neither breached the contract nor acted in bad faith, and was

entitled to value the vehicle through the appraisal process. The District Court also noted Western Agricultural Insurance Company was not a proper defendant in this action.

The parties have stated the issues in this case in differing ways. We believe the critical issue on appeal is whether a private automobile insurance policy may require the parties to submit to an appraisal process to determine the value of the loss in the event there is a disagreement as to value. Although the policy does not specifically provide that the parties are bound by the process, the wording indicates the appraisal process is intended to generate a valuation which is final and binding.

Prior to 1985, § 28-2-708, MCA, stated:

> Restraints upon legal proceedings void. Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals or which limits the time within which he may thus enforce his rights is void.

This statute has been included in the laws of Montana since 1895 and is a codification of the common law rule. See, Wortman v. Montana Central Railway Co. (1899), 22 Mont. 266, 278, 56 P. 316, 321. The effect of § 28-2-708, MCA, was that contract provisions requiring arbitration of all future contract disputes were void. See, e.g. Smith v. Zepp (1977), 173 Mont. 358, 369, 567 P.2d 923, 929.

The 1985 Montana Legislature amended § 28-2-708, MCA, adding the law would not affect the validity of an agreement enforceable under the "Uniform Arbitration Act," Title 27, Chapter 5 of the Montana Codes. The amendment validates arbitration provisions in a contract if they meet the

4

requirement stated in the Uniform Arbitration Act. This obviously has a limiting effect on the scope of § 28-2-708, MCA. Both parties refer to the Act in their arguments, but we find the Act inapplicable to the present case. Section 27-5-114, MCA, states in part:

. . .

> (2) A written agreement to submit to arbitration any controversy arising between the parties after the contract is made is valid and enforceable except upon such grounds as exist at law or in equity for the revocation of a contract. This subsection does not apply to:

. . .

> (b) any agreement concerning or relating to insurance policies or annuity contracts except for those contracts between insurance companies;

. . .

This statute clearly excludes the Garretsons' auto insurance policy and the current dispute is not controlled by the Uniform Arbitration Act.

Prior to 1985, contract provisions requiring arbitration to resolve all future disputes were invalid. However, we had developed at least one exception to this rule. While we had concluded that a contract could not require binding arbitration of all future disputes, those disputes relating solely to questions of fact, such as value or quantity, were subject to arbitration.

The roots of this exception predate the codification of the general rule. In Randall v. American Fire Ins. Co. (1891), 10 Mont. 340, 353, 25 P. 953, 956-957, this Court stated:

[T]he question, as to how far courts will be governed by a provision in the contract, requiring that controversies arising as to the rights and liabilities of parties thereunder be submitted to arbitration, has engaged the profound consideration of both American and English courts of last resort. The conclusion reached, and probably settled beyond further controversy, is that a provision in a contract, requiring all differences or controversies arising between the parties as to their rights and liabilities thereunder, to be submitted to arbitration, will not be allowed to interfere with or bar the litigation of such controversies when brought into court. To enforce such provisions would be to allow parties to barter away the jurisdiction of courts to determine the rights of parties and redress their wrongs. Therefore such provisions are disregarded as against public policy. But many of the same eminent authorities hold that a provision in a contract requiring that the value or quantity of a thing which might be involved in a controversy thereunder be ascertained and determined by arbitration, or in some other possible and reasonable manner, does not oust the jurisdiction of the courts, but only requires a certain character of evidence of a fact in controversy. Therefore a provision in a contract like the one under consideration in the case at bar, requiring that the value of the assured property, under certain conditions, shall be ascertained by appraisal, is not disregarded as against public policy, but is upheld has valid. (Citations omitted.) (Emphasis in original.)

The Randall case was cited with favor in School District No. 1 v. Globe & Republic Ins. Co. (1965), 146 Mont. 208, 212-213, 404 P.2d 889, 892, where we upheld the validity of

6

an insurance policy provision requiring arbitration when the parties disputed the amount of loss incurred. In Globe, we noted a distinction between an agreement requiring a private appraisal to settle a dispute regarding a pure question of fact, i.e., the value of the loss incurred, and an agreement requiring binding arbitration as to the resolution of all future disputes. See also, Palmer Steel Structures v. Westech, Inc. (1978), 178 Mont. 347, 350, 584 P.2d 152, 154; Smith v. Zepp (1977), 173 Mont. 358, 369, 567 P.2d 923, 929; and State ex rel. Cave Const. Co. v. District Court (1967), 150 Mont. 18, 22, 430 P.2d 624, 626.

Where there is no disputed issue of material fact, summary judgment is proper. We agree respondent is entitled to judgment as a matter of law. The District Court did not err in granting summary judgment since there is no disputed issue of material fact. Rumph v. Dale Edwards, Inc. (1969) 183 Mont. 359, 365, 600 P.2d 163.

The appellants' complaint arose from a dispute over the amount of loss resulting from an automobile accident. By the terms the insurance contract, if either party demands an appraisal, that amount of loss to the vehicle must be set by an appraisal. Here, the dispute deals with the amount of loss and the insurance contract clearly provides for an appraisal of such dispute. The parties must comply with the appraisal process before filing a complaint. The contract provisions in Globe were almost identical to those before us. There we held appraisal provisions were not contrary to public policy and therefore it was proper for either party to demand an appraisal. Upon like reasoning, the District Court properly granted Farm Bureau's motion for summary judgment.

We agree with the District Court's conclusion that the parties are bound by the appraisal process set forth in the insurance policy. Therefore, we affirm the District Court's order of summary judgment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8